# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY PAPALEO, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. 17 C 6096 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Papaleo filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and briefed the issue. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB benefits on October 31, 2012, alleging disability beginning on November 26, 2011 due to lower back pain and numbness and pain radiating down both legs. (R. at 144–45, 254). His claim was denied initially on August 13, 2013, and upon reconsideration on April 24, 2014, after which Plaintiff

requested a hearing. (*Id.* at 144, 165, 168–79). On July 23, 2014, Plaintiff amended his alleged disability onset date to January 1, 2013. (*Id.* at 291).

Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on December 9, 2015. (R. at 95–143). The ALJ also heard testimony from Samuel Berman, M.D., a medical expert (ME), and Bob Hammond, a vocational expert (VE). (*Id.* at 95, 121–41, 508). On January 15, 2016, the ALJ held a supplemental hearing to address changes Dr. Berman wanted to make to his previous testimony. (*Id.* at 70–73). The ALJ again heard testimony from Dr. Berman. (*Id.* at 73–92). Plaintiff and another VE appeared, but they did not testify. (*Id.* at 70–94). At the end of the supplemental hearing, Plaintiff again amended his alleged disability onset date, this time to March 1, 2013. (*Id.* at 93, 250).

The ALJ issued an unfavorable decision on February 16, 2016. (R. at 7–28). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since March 1, 2013, his amended alleged onset date. (*Id.* at 12). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative changes to the lumbar spine, arthritis of the knees, morbid obesity, and depressive and anxiety-related disorders. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 14).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[1] and determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) except that he is:

> further limited to work requiring no climbing of ladders, ropes, and scaffolds, no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, with no exposure to unprotected heights, moving mechanical parts, extreme cold, or vibration, and no operating a motor vehicle. Additionally, [Plaintiff] can understand, remember, and carry-out instructions but is limited to performance of simple, routine tasks, simple work-related decisions, can respond appropriately to supervisors and coworkers on a frequent basis, can respond appropriately to the public on an occasional basis, and is limited to tolerating few changes in a routine work setting defined as unskilled work. Time off-task can be accommodated by normal breaks.

(R. at 17). Moving to step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 22). At step five, based on Plaintiff's RFC, age, education, work experience, and the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2), the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as a garment sorter, injection molding machine tender, and a bench assembler. (*Id.* at 23). Accordingly, the ALJ concluded that Plaintiff was not under a disability from the amended alleged onset date of March 1, 2013 through the date of the ALJ's decision. (*Id.* at 23–24).

On July 19, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d

589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court finds that remand is necessary because the ALJ (1) failed to provide legitimate reasons for rejecting the testimony of the ME, Dr. Berman; and (2) failed to explain how her mental RFC assessment is supported by the evidentiary record.[2]

**A. The ALJ's Rejection of the Dr. Berman's Opinion**

In evaluating a claim of disability, "[a]n ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b), (c). This includes opinions offered by any independent medical expert consulted by the ALJ. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005); *Hampton v. Berryhill*, No. 2:17-CV-62-PRC, 2018 WL 1101985, at *5 (N.D. Ind. Mar.

---

[2] Because the Court remands on these bases, it need not address Plaintiff's other argument at this time.

5

1, 2018). Although an ALJ is not bound by a medical expert's opinion, she must give good reasons for rejecting the opinion. *See Hayes*, 416 F.3d at 630; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995) ("The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it."); *Nimmerrichter v. Colvin*, 4 F. Supp. 3d 958, 969 (N.D. Ill. 2013) (finding that the ALJ had to give good reasons for rejecting a portion of the medical expert's opinion). And in doing so, the ALJ must "provide an accurate and logical bridge between the evidence" and her decision to reject the medical opinion. *See Roddy*, 705 F.3d at 636 (internal quotations omitted); *Edwards v. Colvin*, No. 14 CV 1345, 2016 WL 1271049, at *4 (N.D. Ill. Mar. 29, 2016) (in evaluating medical opinions, the ALJ must "articulate enough analysis in her opinion to build an accurate and logical bridge from the evidence to her conclusion").

Here, Dr. Berman, an independent medical expert, testified. (R. 22, 72–92, 121–32). He opined, among other things, that Plaintiff would be limited to standing and walking for ten minutes at a time, and for no more than a total of one hour during a workday. (*Id.* at 22, 130). The ALJ gave this portion of Dr. Berman's opinion "no weight" because (1) Dr. Berman "relied heavily on [Plaintiff's] report of symptomology, which . . . [was] not consistent with the objective findings," and (2) Dr. Berman's opinion did not account for Plaintiff's "potential for improvement," as reflected in physical therapy records from November and December 2015. (*Id.* at 22). Neither reason, as articulated by the ALJ, justifies her decision to reject this portion of Dr. Berman's opinion.

6

First, Dr. Berman's testimony does not indicate that he relied "heavily" on Plaintiff's subjective complaints or that he otherwise minimized his reliance on the objective evidence. At the first hearing, Dr. Berman testified that the functional limitations he set forth were "based on both, the objective medical evidence, and of course, [Plaintiff's] symptoms." (R. at 131). The ALJ even noted that Dr. Berman's testimony at the first hearing was "based both, on objective medical evidence and reported symptoms." (*Id.* at 76–77). At the second hearing, Dr. Berman similarly testified that his RFC assessment was based on both "[o]bjective and subjective evidence." (*Id.* at 91).

Furthermore, Dr. Berman identified multiple objective findings that he considered in forming his opinions. For instance, Dr. Berman identified an April 2013 MRI, which reported extensive degenerative change in the lower lumbar spine with disc herniations; a December 2015 MRI, which showed disc bulging, extrusion, and herniation; positive bilateral straight leg raise test results;[3] positive bilateral FABER test results;[4] and reported tenderness in Plaintiff's lumbar spine. (*See, e.g.*, R. at 77–79, 83–86, 89–90, 123–29). Dr. Berman also opined that Plaintiff's marked obesity

---

[3] A straight leg raise test is "positive" if the patient "experiences pain behind the leg below the knee when the leg is raised," which indicates "that one or more nerve roots leading to the sciatic nerve may be compressed or irritated." ePainAssist, https://www.epainassist.com/back-pain/lower-back-pain/how-and-why-is-straight-leg-raise-test-done-know-its-interpretation (last visited Sept. 13, 2018).

[4] FABER stands for flexion, abduction, and external rotation. "These three movements combined result in a clinical pain provocation test to assist in diagnosis of pathologies at the hip, lumbar and sacroiliac region." Physiopedia, https://www.physio-pedia.com/FABER_Test (last visited Sept. 13, 2018). A "positive" test reproduces a patient's pain or limits a patient's range of movement. *Id.*

7

(another determination that does not depend on Plaintiff's subjective complaints) was pulling Plaintiff's "spine out of alignment" and "putting more pressure on the discs." (*Id.* at 78, 129–30).

True, Dr. Berman did indicate that he may have relied upon subjective evidence to find that Plaintiff's functional limitations dated back to March 2013. (R. at 91). But this snippet of testimony, which only addressed the onset date of Plaintiff's limitations, does not demonstrate that subjective evidence unduly influenced Dr. Berman's underlying formulation of these limitations. This is especially the case considering that Dr. Berman, as discussed above, explicitly identified various objective findings and twice testified that he considered both objective and subjective evidence. To the extent the ALJ found that Dr. Berman's testimony about the onset date of Plaintiff's limitations evidenced a "heavy" reliance on subjective allegations, she incorrectly interpreted the testimony and improperly read it in isolation. *See Kaminski v. Berryhill*, 894 F.3d 870, 874–75 (7th Cir. 2018) (explaining that it is impermissible to cherry-pick evidence and that a decision based on an incorrect interpretation of the evidence is not supported by substantial evidence).

Second, it is unclear why Plaintiff's "potential for improvement" in late 2015 justified rejecting Dr. Berman's opinion regarding Plaintiff's standing and walking capabilities. The physical therapy records that the ALJ seemingly relied upon state that "[f]unctional improvement [is] expected." (R. at 528–29, 567, 569). But the mere expectation of some undefined amount of improvement, sheds little, if any, light on whether Dr. Berman's opinion properly reflected Plaintiff's standing and walking

limitations. *Sanders v. Berryhill*, No. 17 C 2672, 2018 WL 3533312, at *4 (N.D. Ill. July 23, 2018) (finding that the ALJ erred by failing to explain how the claimant's "improvement undermined her statements that she continued to experience symptoms or how it related to her ability to work"). The ALJ was required to build an accurate and logical bridge explaining why the evidence of Plaintiff's expected functional improvement in late 2015 led her to give no weight to Dr. Berman's opinion. *See Roddy*, 705 F.3d at 636; *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]"). The ALJ's failure to do so was error.

In sum, the ALJ failed to adequately justify her decision to reject Dr. Berman's opinion regarding Plaintiff's standing and walking limitations, requiring remand. To be clear, the Court is not finding that the ALJ must give Dr. Berman's opinion any particular weight on remand. Rather, the ALJ must offer good reasons for whatever determination she makes, supported by substantial evidence. On remand, the ALJ shall re-evaluate Dr. Berman's opinion in accordance with the factors set forth in 20 C.F.R. § 404.1527(c) and build an accurate and logical bridge explaining how the evidence supports her determination.

**B. Plaintiff's Mental RFC**

"The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76. More specifically, the "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may

9

cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). An RFC "is based upon medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family." *Craft*, 539 F.3d at 676.

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7. The ALJ must explain how she reached her conclusions about a claimant's capabilities and build an "accurate and logical bridge" from the evidence to these conclusions. *Briscoe*, 425 F.3d at 352; *Young,* 362 F.3d at 1002 (internal quotations omitted). And the ALJ must identify some record basis to support the RFC finding. *See Scott*, 647 F.3d at 740. If an ALJ fails to explain her RFC conclusions, this failure itself "is sufficient to warrant reversal." *Briscoe*, 425 F.3d at 352.

Here, the ALJ's assessment of Plaintiff's mental limitations restricts him as follows: Plaintiff "can understand, remember, and carry-out instructions but is limited to performance of simple, routine tasks [and] simple work-related decisions"; Plaintiff "can respond appropriately to supervisors and coworkers on a frequent basis [and] appropriately to the public on an occasional basis"; Plaintiff "is limited to tolerating few changes in a routine work setting defined as unskilled work"; and Plaintiff's "[t]ime off-task can be accommodated by normal breaks." (R. at 17). To support her mental RFC determination, the ALJ summarized different aspects of the

evidentiary record including portions of hearing testimony, Plaintiff's reported allegations, medical records (including the lack of records for certain time periods), and the results of Plaintiff's examinations. (*Id.* at 15–16, 18–19).

However, merely summarizing various aspects of the evidentiary record is insufficient; the ALJ was required to connect the dots between the evidence regarding Plaintiff's mental impairments and each specific mental RFC restriction. *See Young*, 362 F.3d at 1002; *Arnold v. Berryhill*, No. 16-cv-146-JPG-CJP, 2017 WL 2418721, at *8 (S.D. Ill. June 5, 2017); *see also* SSR 96-8p, at *7 (the RFC discussion must describe "how the evidence supports *each* conclusion") (emphasis added). By not doing so, the ALJ failed to build the requisite "accurate and logical bridge" between the evidence— whether medical or nonmedical—to the mental restrictions she imposed. *See Young*, 362 F.3d at 1002 (internal quotations omitted); *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *3 (N.D. Ill. May 26, 2017).

For instance, although the mental RFC posits that Plaintiff's off-task time could be accommodated by normal breaks, (R. at 17), the ALJ did not cite any evidence indicating how often Plaintiff would be off-task or reference any evidence suggesting that "normal breaks" could accommodate this undefined off-task time. As another example, the mental RFC allows Plaintiff to respond appropriately to supervisors and coworkers on a frequent basis but to the public only on an occasional basis. (*Id.*). Yet the ALJ did not explain why Plaintiff can respond appropriately to his supervisors and coworkers more often than to the public, nor did the ALJ identify any evidence justifying this distinction. In defending the ALJ's decision, the Commissioner fails to

11

explain how the evidence identified by the ALJ supports these or any other aspects of the mental RFC. (*See* Def.'s Resp., Dkt. 17 at 2–4).

In finding that the ALJ's decision fails to adequately identify and explain the evidence underlying the mental RFC, the Court acknowledges that both state agency psychological consultants opined that Plaintiff did not suffer from any non-severe mental impairments. (R. at 21, 149, 159). Such opinions, which indicate that a claimant has no mental limitations that would affect her ability to work, could in some circumstances provide sufficient evidentiary support for an RFC that imposes any sort of mental restrictions. *See, e.g.*, *Poole v. Colvin*, No. 12 C 10159, 2016 WL 1181817, at *8–9 (N.D. Ill. Mar. 28, 2016). The Court, however, does not find those circumstances present here; the ALJ gave the opinions of the state agency psychological consultants "little weight" because subsequent evidence justified greater limitations. (R. at 21). Thus, the ALJ's explicit rejection of these opinions indicates that she did not intend for them to provide support for Plaintiff's mental RFC. *See Scott*, 647 F.3d at 739 (the Court confines its "review to the rationale offered by the ALJ").

The Court finds that the ALJ's decision fails to adequately identify and explain the evidence underlying the mental RFC. On remand, the ALJ shall build an "accurate and logical bridge" from the evidence to her conclusions and explain how each restriction incorporated into her RFC assessment is supported by the record evidence. *See Briscoe*, 425 F.3d at 352; *Young,* 362 F.3d at 1002; *Scott*, 647 F.3d at 740.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request for reversal and remand for further proceedings [14] is **GRANTED**, and the Commissioner's motion for summary judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: October 29, 2018

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge